UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROSA ACOSTA, et al.** :<br>:<br>Plaintiffs, :<br>:<br>v. :<br>:<br>**FARAONES NIGHTCLUB, et al.,** :<br>:<br>Defendants. :<br>: | **Civil Action No. 18-17710 (MAH)**<br><br>**OPINION** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Rosa Acosta's motion for entry of default judgment against Defendant Faraones Nightclub ("Faraones" or "Defendant"). Mot. for Default Judgment, Feb. 3, 2023, D.E. 158.[1] Specifically, Plaintiff seeks entry of a default judgment against Faraones in the amount of $20,000. The Court has not received any opposition.

The Court has decided this motion without oral argument. *See* Fed. R. Civ. P. 78; Local Civ. R. 78.1. For the reasons set forth below, the Court will grant Plaintiff's motion.

## II. BACKGROUND[2]

Plaintiff Rosa Acosta filed this action on December 28, 2018, alleging that Defendant Faraones Nightclub misappropriated Plaintiff's image and likeness by using her image in its advertisements and social media, without Plaintiff's consent. Compl., D.E. 1, ¶¶ 66, 74-84.

---

[1] The parties consented to the Undersigned's jurisdiction on April 19, 2022 to conduct the remaining proceedings in this matter. Consent Order, D.E. 148.

[2] The facts set forth below are gleaned from the Complaint, which the Court will accept as true for the purpose of setting forth the allegations and claims. The Court will not accept the bare allegations of the Complaint as true for purposes of establishing the amount of any damages that Plaintiff has suffered. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). As set forth herein, however, Plaintiff has offered independent proofs to establish damages.

Plaintiff is a professional model and actress who resides in California. *Id.* ¶ 1. Plaintiff "earns a living by commercializing her identity, image, and likeness through negotiated, arms-length transactions with reputable commercial brands and companies." *Id.* ¶ 61. At all times relevant to this action, Faraones was a nightclub located in Plainfield, New Jersey. *See id.* ¶¶ 50-52. To advertise and promote its business, Faraones maintained various websites and social media accounts, such as on Facebook, Instagram, and Twitter. *Id.* ¶¶ 51-52.

To support her claims in this action, Plaintiff identified each unauthorized use of her image by Faraones. *Id.* ¶ 67. Plaintiff alleges that she is "readily identifiable" in those images. *Id.* ¶ 77. Plaintiff avers that Faraones used the images to advertise or solicit business for its establishment, but never compensated Plaintiff for the use of those images. *Id.* ¶¶ 78-80. Thus, Plaintiff asserts claims for misappropriation of likeness and unfair competition under common law (Counts I and IV); violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); unfair competition/false endorsement under N.J. Stat. Ann. §§ 56:4-1, *et seq.* (Count III); and violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1, *et seq.* (Count V). *Id.* ¶¶ 436-79.

On January 30, 2019, a copy of the Summons and Complaint was left with Alicia Huriedo, who held herself out as a manager for Faraones and who accepted service on behalf of Faraones. Proof of Service, D.E. 9. Counsel for Faraones appeared on May 14, 2019, and filed the Defendant's Answer thereafter. Notice of Appearance, D.E. 58; Answer, D.E. 61. This matter proceeded through fact discovery and the Court held a settlement conference on January 20, 2022.

On January 20, 2022, the Undersigned was informed that Faraones' principal had passed. Order, Jan. 20, 2022, D.E. 143. Accordingly, the Court entered an Order stating:

> [C]ounsel for Defendant Faraones Nightclub will investigate ownership/operation of the nightclub following the recent passing of its principal, and provide such information to counsel for Plaintiff. On or before February 4, 2022, counsel for Defendant Faraones Nightclub will submit a joint status report to the Court concerning same.

*Id.* This Court thereafter held a telephone status conference on March 2, 2022, and subsequently ordered Defendant to file a status report by April 4, 2022. Order, D.E. 145. On April 4, 2022, Defendant's then-counsel, H. Benjamin Sharlin informed the Court that he was unable to make contact with his "deceased's client representative's wife, Rocio Garcia."

Mr. Sharlin subsequently filed a motion to withdraw as counsel to Faraones. Mot. to Withdraw, D.E. 149. Mr. Sharlin certified that when he reached out to Ms. Garcia on January 20, 2022, she "indicated she was unable to assist." Cert. of Benjamin Sharlin, Esq. ("Sharlin Cert."), D.E. 149-1, ¶¶ 6-7. He also certified that subsequent attempts to contact Ms. Garcia were unsuccessful. *Id.* ¶ 10. Mr. Sharlin also sent Ms. Garcia a copy of the Complaint and informed her of the need for authorization to continue his representation, which too went unanswered. *Id.* ¶ 9. As a result, counsel alleged he had "been left without a client representative" and was forced to withdraw from his representation of Faraones. *Id.* ¶¶ 8, 11. The Undersigned granted counsel's motion to withdraw on July 19, 2022. Order Granting Mot. to Withdraw, D.E. 152. The Court also allowed Defendant sixty days to obtain new counsel. *Id.* at 1. Finally, the Court required Plaintiff's counsel to serve a copy of the Order on Faraones "at its last known business address, and . . . on Rocio Garcia, the wife of the decedent and former representative of Faraones Nightclub." *Id.* at 2.

The Court held an additional conference on October 18, 2022. Order, D.E. 153. Plaintiff's counsel appeared, as did Mr. Sharlin, despite the Court having relieved him as counsel. However, neither new counsel or any other representative for Faraones appeared for

3

that conference, or at any subsequent point in this litigation.³ Thus, the Undersigned ordered that Plaintiff make an application for the entry of default as against Faraones. Order, Oct. 18, 2022, D.E. 154.

Plaintiff moved for entry of default against Faraones on November 28, 2022. Mot. for Entry of Default, D.E. 156. This Court granted the motion on December 22, 2022. D.E. 157. The instant application followed.

### III.  DISCUSSION

#### A.  Default Judgment Pursuant to Rule 55

Federal Rule of Civil Procedure 55 governs default judgments. The determination of whether default judgment is warranted is a two-step process. First, a party must obtain an entry of default under Rule 55(a). Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to . . . defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Once a party obtains default, Rule 55(b) permits courts to enter a default judgment on motion by that party. Fed. R. Civ. P. 55(b).

This matter presents an unusual scenario whereby Defendant Faraones was properly served and filed its answer, but thereafter, failed to participate in the litigation. Proof of Service, D.E. 9; Answer, D.E. 61. After the passing of its principal in early 2022, Faraones failed to respond to its then-counsel's request to continue its representation. Sharlin Cert., D.E. 149-1, ¶¶ 6-7, 9-11. On July 19, 2022, the Undersigned granted counsel's request to withdraw from representation of Faraones because of the breakdown in the attorney-client relationship. Order

---

³ In the approximately ninety-one days between entry of the July 19, 2022 Order and the October 18, 2022 status conference, the Court received no indication from Faraones that it was attempting to secure new counsel. Nor did Faraones request an extension of time by which to procure new counsel.

4

Granting Mot. to Withdraw, D.E. 152. Since then, Faraones has failed to comply with the Undersigned's Order to obtain new counsel or participate in this matter in any way.

Plaintiff has satisfied the first step in securing a default judgment. Plaintiff filed a motion for entry of default on November 28, 2022. Mot. for Default, D.E. 156. The Court granted that application and entered default on December 22, 2022. Order Granting Default, Dec. 22, 2022, D.E. 157. The Undersigned required Plaintiff to move for any motion for default judgment pursuant to Rule 55(b) against Faraones by or before February 3, 2023, which Plaintiff timely filed.

It is well settled that in the Third Circuit, entry of a default judgment is left to the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). However, the Third Circuit has made clear its "preference that cases be disposed of on the merits whenever practicable." *Id.* at 1180-81. In considering a motion for the entry of default judgment, a court must consider whether the allegations set forth in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008); *Wong*, 2012 WL 5986474, at *1 ("Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief.") (quoting *E. Constr. & Elec. v. Universe Techs., Inc.*, Civ. No. 10-1238, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011)). Courts must also consider whether default judgment is proper, which requires an analysis of "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Triboro Hardware & Industrial Supply Corp. v. Greenblum*, Civ. No. 19-13416, 2020 WL 7074383, at *2 (D.N.J. Dec. 3, 2020) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, Civ. No. 11-7137,

2012 WL 3018062, at *2 (D.N.J. July 24, 2014)).[4]  In conducting its analysis, the Court "assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages." *Tenny Journal Commc'ns, Inc. v. Verizon N.J. Inc.*, Civ. No. 19-19183, 2022 WL 18231620, at *3 (D.N.J. Dec. 19, 2022).

### i. Whether Plaintiff Has Alleged Legitimate Causes of Action

Plaintiff's Complaint alleges five causes of action; however, Plaintiff's moving brief addresses only her false-endorsement claim under the Lanham Act, 15 U.S.C. § 1125(a), and the common law misappropriation-of-likeness claim.  *See* Moving Br., D.E. 158-1, at 4-10.  The Court nevertheless considers Plaintiff's claims as set forth in the Complaint.

This matter is substantially similar to the district court's decision in *Cozzens v. DaveJoe RE, LLC*, Civ. No. 17-11535, 2019 WL 522071 (D.N.J. Feb. 11, 2019).  In *Cozzens*, various adult entertainment clubs used the plaintiffs' images and likeness in their advertising.  *Id.* at *1.  The plaintiffs, like Ms. Acosta here, were models and actresses.  *Id.*  The plaintiffs alleged

---

[4] Generally, courts must also determine whether they have personal and subject matter jurisdiction over the parties and whether the defendants were served.  *Howard Johnson Int'l, Inc. v. Shlok, LLC*, Civ. No. 18-9962, 2020 WL 7778064, at *2 n. 3 (citing *Days Inn Worldwide, Inc. v. Jinisha Inc.*, Civ. No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)).  The Court need not analyze these factors extensively.  Defendant Faraones was served, had filed an answer, and otherwise litigated this matter before its principal passed away.  Thus, Defendant waived any challenge to service and to personal jurisdiction.  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019) ("[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum.") (quoting *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994)).  Additionally, Plaintiff's Complaint states claims under federal law, *i.e.,* the Lanham Act.  Thus, the Court has federal question jurisdiction over this case and supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1331; *Cozzens v. DaveJoe RE, LLC*, Civ. No. 17-11535, 2019 WL 522071, at *1-2 (D.N.J. Feb. 11, *2019*) (asserting supplemental jurisdiction over New Jersey state law claims pursuant to 28 U.S.C. § 1367 where the plaintiff alleged that the defendants used a model's likeness in advertising without her permission).  Therefore, the Court is satisfied it has personal jurisdiction and subject matter jurisdiction over the parties, and that Defendant was served.

causes of action under federal law and New Jersey common law: (1) misappropriation of likeness under New Jersey common law; (2) unfair competition and/or false endorsement under the Lanham Act; (3) unfair competition and/or false endorsement under New Jersey Statute § 56:4-1; and (4) New Jersey common law unfair competition. *Id.* The defendants failed to appear in that action and the plaintiffs thus moved for default judgment. *Id.*

After analyzing the two-step default judgment process, the court found that entry of default judgment was warranted. The court first found that plaintiffs established a prima facie case on all four claims. *Id.* at *3-5. The court then held that plaintiffs were entitled to default judgment for three reasons. First, the plaintiffs would be prejudiced absent entry of default judgment because the defendants failed to answer or otherwise appear in this matter. *Id.* at *5. Second, the court could not determine whether the defendants had any meritorious defenses because they failed to respond. *Id.* Lastly, the court found that the defendants' failure to appear was the result of their culpable misconduct. *Id.* Therefore, the Court granted the plaintiffs' motion for default judgment. *Id.* at *6.

The Undersigned similarly finds, for the reasons set forth below, that Plaintiff has adequately plead factual allegations for four of the five claims alleged in the Complaint. Consequently, the Court will grant Plaintiff's motion for default judgment as to those claims.

### 1. Count I: Misappropriation of Likeness, Common Law

Plaintiff has adequately plead factual allegations that establish a prima facie case of misappropriation of likeness under New Jersey common law. To state a claim for misappropriation of likeness under New Jersey law, plaintiff must show: "(1) the defendant appropriated the plaintiff's likeness, (2) without the plaintiff's consent, (3) for the defendant's use or benefit, and (4) damage." *Cozzens*, 2019 WL 522071, at *3; *Hart v. Elec. Arts, Inc.*, 740

F. Supp. 2d 658, 665 n.5 (D.N.J. 2010). Here, Plaintiff alleges that she is a professional model and actress who commercializes her image and likeness through business arrangements. Compl., D.E. 1, ¶¶ 61, 74. Plaintiff further alleges that Defendants have misappropriated Plaintiff's images and likenesses without permission for a commercial purpose, specifically to gain business and increase customer traffic into the establishment. *Id.* ¶¶ 66, 69-72, 77-78, 82. Plaintiff identifies specific instances whereby Faraones utilized her image without authorization. *Id.* ¶ 67. Lastly, Plaintiff alleges that she has suffered damages as a result. *Id.* ¶¶ 83-84 (asserting that Faraones "made profits or gross revenues" due to the use while Plaintiff "lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages"). Therefore, Plaintiff has adequately stated a claim as to Count I of her Complaint.

### 2. Count II: False Endorsement Pursuant to the Lanham Act, 15 U.S.C. § 1125(a)

Plaintiff has also set forth well pleaded factual allegations that constitute a legitimate cause of action with respect to her false endorsement claim under the Lanham Act. To state a claim for false endorsement under the Lanham Act, a plaintiff must allege: "(1) its mark is legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008). "A celebrity is entitled to vindicate property rights in his or her identity under § 1125(a) of the Lanham Act, because he has an economic interest in his identity akin to that of a traditional trademark holder." *Cozzens*, 2019 WL 522071, at *3 (quoting *Facenda v. N.F.L. Films, Inc.*, 488 F. Supp. 2d 491, 503 (E.D. Pa. 2007) (alterations omitted).

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has adequately alleged that she owns a legally protectable mark—her image and likeness. As a model and actress, Plaintiff earns a living by commercializing her image and likeness for use by others for their businesses. Compl., D.E. 1, ¶¶ 74-75. By negotiating with businesses in arms-length transactions, Plaintiff contends she has safeguarded an exclusive right to her protectable mark. *Id.* ¶ 75. Therefore, Plaintiff has satisfied the first two elements of a false endorsement Lanham Act claim. *See Cozzens*, 2019 WL 522071, at *3.

The third element requires consideration of eight additional factors:

1. the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;

2. the relatedness of the fame or success of the plaintiff to the defendant's product;

3. the similarity of the likeness used by the defendant to the actual plaintiff;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. defendant's intent in selecting the plaintiff; and

8. likelihood of expansion of the product lines.

*Id.* at *4 (citing *Facenda*, 542 F.3d at 1019-20). The Court finds that these factors weigh in favor of finding that Defendant's use of Plaintiff's protectable mark created confusion and/or deception. Plaintiff purportedly has achieved "significant fame and celebrity [status]" from her modeling career, thus signaling that she has some recognition in the Defendant's line of business. *Id.* ¶ 445. Furthermore, Plaintiff alleges that she has maintained a significant social-media presence. *Id.* ¶ 446. Defendant Faraones used Plaintiff's exact image in its advertising. *Id.* ¶¶

9

67 (alleging that Defendant used Facebook to promote Plaintiff's image and likeness), 77, 452. Plaintiff has also asserted that Defendant created a "false impression that Plaintiff[]" was affiliated with Faraones," thus deceiving the public. *Id.* ¶¶ 67-68, 442.  Lastly, Plaintiff alleges that Defendant's use of her protectable mark was deliberate. *Id.* ¶ 81.  Accordingly, the Undersigned finds that Plaintiff has adequately plead a false endorsement claim against Faraones pursuant to the Lanham Act.

### 3. Counts III and IV: False Endorsement, N.J.S.A. 56:4-1, et seq., Unfair Competition

Plaintiff also pleads a state-law claim for false endorsement, and a common-law claim for unfair competition.  Having already concluded that Plaintiff has adequately plead her Lanham Act claim, the Court likewise finds that Plaintiff has adequately plead her New Jersey statutory and common-law claims.  That is because New Jersey law does not provide less protection than the Lanham Act in such cases. *Cozzens*, 2019 WL 522071, at *4; *Cf. Prime Hookah Inc. v. FCM Online LLC*, Civ. No. 21-13915, 2022 WL 1115361, at *3 (D.N.J. Apr. 14, 2022) (finding that the Court need not analyze claims for unfair competition under New Jersey common law and those made under the Lanham Act separately once a plaintiff has made out a viable claim under the federal law) (collecting cases).

### 4. Count V: Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, et seq.

Plaintiff fails to address the New Jersey Consumer Fraud Act claim in her moving brief. Nevertheless, the Court finds that Plaintiff has failed to adequately plead a claim under the NJCFA for purposes of the instant motion.  The NJCFA prohibits, in relevant part:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or

> omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A. 56:8-2. A plaintiff seeking to pursue a claim under the NJCFA must establish three elements: "(1) unlawful conduct, (2) an ascertainable loss, and (3) a casual connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *See Morisseau v. Borough of N. Arlington*, Civ. No. 16-837, 2018 WL 1522731, at *14 (D.N.J. Mar. 28, 2018). However, to adequately state a claim under the NJCFA, there must be a consumer transaction between the parties. *See, e.g., Liebholz v. Harriri*, Civ. No. 05-5148, 2006 WL 2023186, at *6 (D.N.J. July 12, 2006) ("Since Harriri did not engage in any transaction with Gensor, he cannot state a claim under the CFA."); *Directv, Inc. v. Marino*, Civ. No. 03-5606, 2005 WL 1367232, at *3 (D.N.J. June 8, 2005) ("Put simply, the Act is intended to protect consumers engaging in consumer transactions."). Here, the thrust of Plaintiff's allegations is premised on the absence of a transaction. Indeed, Plaintiff alleges that Defendant was unlawfully using her image and likeness for commercial gain. That is fatal to her NJCFA claim.[5] *See Directv, Inc.*, 2005 WL 1367232, at *3 (finding that because defendant was illegally intercepting the plaintiff's programming without paying for it, there was no consumer transaction). Accordingly, the Court will deny Plaintiff's request for default judgment as to Count V of the Complaint.

### ii. Whether Entry of Default Judgment Would Be Proper

Having determined that Plaintiff has set forth viable causes of action as to four of the five claims alleged in the Complaint, the Court turns to whether default judgment is proper. To

---

[5] Therefore, the Court need not reach the additional issue of whether, even if there had been an agreement or transaction between Plaintiff and Faraones, it could have been accurately described as a "consumer transaction" under the NJCFA.

determine whether default judgment is appropriate, courts consider three factors: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Cozzens*, 2019 WL 522071, at *5. The Court finds that all three factors weigh in favor of entering a default judgment against Defendant.

First, Plaintiff will suffer prejudice if a default judgment is not entered. This matter has been pending for nearly five years. Defendant had months to secure new counsel, during which the progress of the litigation necessarily came to a halt. Given Defendant's failure to secure new counsel, Plaintiff has no other means to pursue her claims. *Cozzens*, 2019 WL 522071, at *5; *MicroBilt Corp. v. Bail Integrity Solutions, Inc.*, Civ. No. 19-637, 2022 WL 2910462, at *4 (D.N.J. July 21, 2022).

Second, a defense will be considered meritorious if "the allegations of the pleadings, if established at trial, . . . would constitute a complete defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984). The Defendant's Answer provides no indication of a defense that likely would be meritorious. Answer, D.E. 61. Instead, the Answer provided simple denials, or denied the allegations based on "insufficient knowledge regarding the truth of said allegations." *Id.*; *See Price Home Grp., LLC v. Ritz-Craft Corp. of Pa., Inc.*, Civ. No. 16-668, 2017 WL 5191807, at *4 (D.N.J. Nov. 8, 2017) (finding that "simple denials and bare, legal defenses, without further elaboration or reference to the specific facts . . . [provide the Court with] no other basis from which to extrapolate a defense"). Because these defenses are ambiguous and generic, the Court finds that this factor likewise weighs in favor of entering default judgment.

Third, the Court can conclude only that Defendant's failure to secure new counsel is the result of its own inaction. Prior to Mr. Sharlin's withdrawal from his representation of Faraones, he attempted to contact Ms. Garcia, the widow of Faraones's principal/owner, on numerous occasions. Sharlin Cert., D.E. 149-1, ¶¶ 6-7, 9-10. Having been unable to secure Ms. Garcia's permission to continue representation, Mr. Sharlin requested to withdraw from this matter. *Id.* ¶¶ 8, 11-12. The Court granted Mr. Sharlin's motion and provided Defendant Faraones ample opportunity to secure new counsel. Order Granting Mot. to Withdraw, D.E. 152, at 1. Defendant failed to do so, and never requested an extension of time to secure counsel. Therefore, the Court finds this factor also weighs in favor of entering default judgment.

### B. Damages

Having determined that it is appropriate to enter default judgment, the Court next considers the relief to which Plaintiff is entitled. Plaintiff seeks an "aggregate quantum of damages" for $20,000. Moving Br., D.E. 158-1, at 10. To determine the damages to which Plaintiff is entitled, the Court "may conduct hearings or make referrals[.]" Fed. R. Civ. P. 55(b)(2)(B); *Air Sea Transp., Inc. v. Niki Int'l, Inc.*, Civ. No. 12-6244, 2014 WL 3548628, at *6 (D.N.J. July 17, 2014). However, no further evidentiary inquiry is necessary if the damages are for a "sum certain or for a sum which can by computation be made certain[.]" *Air Sea Transp., Inc.*, 2014 WL 3548628, at *6; *Bds. of Trs. of the Operating Eng'rs Local 825 Welfare Fund v. Robert Silagy Landscaping Inc.*, Civ. No. 06-1795, 2006 WL 3308578, at *4 (D.N.J. Nov. 13, 2006) ("Even when faced with claims for uncertain damages a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.") (internal quotation marks and alterations omitted).

13

In support of damages, Plaintiff submits the Declaration and expert report of Steven Chamberlin, who is a model and talent agent. Decl. & Expert Report of Steven Chamberlin ("Chamberlin Report"), D.E. 158-2. Mr. Chamberlin declares that he has acquired extensive knowledge and experience by virtue of spending approximately thirty years in the model and talent industry. *Id.* ¶¶ 1-2.[6] He has provided trial and deposition testimony as an expert in many federal and state cases. Stephen Chamberlin Testifying Experience Table, D.E. 158-2, at 19. Defendant, on the other hand, has failed to oppose the motion, including the amount of damages sought. The Court finds that it has sufficient evidence before it to determine the amount of damages to which Plaintiff is entitled, and need not hold a hearing. *Super 8 Worldwide, Inc. v. 3082649 Nova Scotia, Ltd.*, Civ. No. 14-6275, 2016 WL 1118497, at *5 (D.N.J. Mar. 22, 2016) (finding that an *ex parte* evidentiary hearing on damages would serve "little additional purpose" and ruling on the record before the court); *Cozzens*, 2019 WL 522071, at *6 (finding that an actual hearing is not necessary where the plaintiffs submitted declarations and retained an expert on the amount of damages).

To determine whether the damages Plaintiff seeks are appropriate, the Court again relies on *Cozzens*.[7] In that case, the court entered default judgment in plaintiffs' favor, but could not determine damages based on the record. *Cozzens,* 2019 WL 522071, at *6. The court concluded that although plaintiffs' expert was credible, the expert had failed to explain "how the methodology was used to compute the damages for each Plaintiff." *Id.* The plaintiffs then filed

---

[6] For the sake of clarity, Mr. Chamberlin submitted both a declaration and an expert report. Citations to paragraphs refer to the declaration. Citations to page numbers refer to the expert report.

[7] Neither Plaintiff nor Mr. Chamberlin has provided the Court with any statute or caselaw as to the amount of damages recoverable in actions such as this one.

supplemental briefing and documentation, which included a report from Mr. Chamberlin. *Cozzens v. DaveJoe RE, LLC*, Civ. No. 17-11535, Supp. Mot. and Supporting Documents, D.E. 16. The *Cozzens* court found that the plaintiffs' supplemental filing cured the deficiencies. *Cozzens v. DaveJoe RE, LLC*, Civ. No. 17-11535, D.E. 18, at 4-7 (D.N.J. Apr. 8, 2019). In assessing the plaintiffs' damages for misappropriation of likeness and the federal and state law claims for false endorsement, the court looked to the "fair market value of what was lost[.]" *Id.* at 5-6. To measure the fair market value, the court evaluated "(1) the type of use, (2) the amount of use (number of images and how broadly dispersed), and (3) the individual's historic rates for that type and amount of use." *Id.* at 6.

Here, Chamberlin opines that that Plaintiff suffered $20,000 in damages for Defendant's unauthorized use of her image. Chamberlin Report, D.E. 158-2, at 50. That sum includes $10,000 arising from Defendant's "advertising" of Plaintiff's image. *Id.* Chamberlin defines advertising as "the use of an of an image to promote a business, company or event, on a website owned, controlled or contributed to by a client or . . . anywhere the business or product name of the client is associated or attached with the image." *Id.* at 22. Chamberlin further opines that Defendant's "social media" use of Plaintiff's image warrants a damages award of $10,000. *Id.* at 50. As defined by Chamberlin, social media "includes, but is not limited to, Facebook, Twitter, Instagram, Google+, Yelp, YouTube, Snapchat and Tumblr." *Id.* at 22. Taken together, Chamberlin opines that the fair market value for Defendant's use of Plaintiff's image would amount to $20,000. *Id.* ¶¶ 12, 26-27, 33, 38-40.

The Court is satisfied that $20,000 is an appropriate measure of damages. The well pleaded allegations of the Complaint and Mr. Chamberlin's expert opinion establish that Defendant used Plaintiff's image on several occasions for both advertising and social-media

purposes. *Id.* at 50. Defendant's use of Plaintiff's image caused those images to be widely dispersed on social media and in Defendants' advertising of its establishment. Moreover, there is no indication in the record that Defendant or anyone else took down or otherwise removed access to Plaintiff's image on social media before the litigation. *Id.* ¶ 35. Further, it is apparent that Plaintiff is well known as a model and actress. *Id.* at 37-38 (stating that Ms. Acosta has been a model since 2004 and has over five million social media followers, among other things). Lastly, Ms. Acosta historically has charged similar amounts for use of her image and likeness in other social media and advertising postings. *Id.* at 38-44, 49 (detailing that Ms. Acosta was guaranteed upwards of $20,000-$35,000 for similar postings). Therefore, the Court finds that the $20,000 Plaintiff seeks is fair and reasonable, and is supported by the record evidence.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff Rosa Acosta's Motion for Entry of Default Judgment, D.E. 158, and enter judgment against Defendant in the amount of $20,000. An appropriate Order follows.


**Dated:** August 3, 2023

                                                    *s/ Michael A. Hammer*
                                                  **United States Magistrate Judge**